Louis L. Friedman, J.
This is an article 78 proceeding wherein petitioner, tenant in an apartment building referred to in the papers before the court, seeks to revoke a determination made by the Temporary State Bent Administrator, the said determination having granted the landlord’s application for an increase in rent pursuant to paragraph 5 of section 33 of the State Bent and Eviction Begulations (as amd. eff. June 30, 1957).
In its application before the respondent, the landlord of the subject premises contended that it was entitled to a net annual return of 6% as provided for by statute and that such return should be computed upon the value of the premises as determined by the purchase price thereof paid by said landlord. The petitioner herein, tenant in said premises, while conceding the landlord’s right to a 6% return, denies that the purchase price of said premises should be used as the basis upon which said return should be computed.
The major contention raised by the petitioner to set aside respondent’s determination, is the alleged improper use by the respondent of the purchase price as the basis of determining the value of the subject property, instead of applying the equalized assessed valuation fixed by the Tax Commission after approving the landlord’s application seeking a reduction of the proposed 1956-1957 and 1957-1958 assessed valuation. In addition, petitioner argues that the landlord’s application should have been denied due to the failure on the landlord’s part in maintaining the essential services in existence in 1950. Other objections raised relate to the methods and items of expenses-used by the respondent in reaching, his determination.
*273 The decision in this case with respect to the valuation of the property must rest upon the provisions of paragraph 5 of section 33 of the State Rent and Eviction Regulations. This section authorizes an aggregate increase in the maximum rents, when necessary to yield a net annual return from the property equal to 6% of its “valuation” over and above the adjusted operating expenses. The pertinent portions of the section (par. 5) read as follows: ‘ Such valuation shall be the current assessed valuation established by a city, town or village, which is in effect at the time of the filing of the application for an adjustment under this paragraph, properly adjusted by applying thereto the ratio which such assessed valuation bears to the full valuation as determined by the State Board of Equalization and Assessment on the basis of assessment rolls of cities, towns and villages for 1954 and certified for such year by such Board pursuant to Section 49-d of the Tax Law; provided * * * except where there has been a bona fide sale of the property within the period between March 15, 1953, and the time of the filing of the application, as a result of a transaction at arms’ length, on normal financing terms at a readily ascertainable price and unaffected by special circumstances such as a forced sale, exchange of property, package deal, wash sale or sale to a cooperative * * *. The Administrator may make a determination that the valuation of the property for the purposes of this paragraph is an amount different from such equalized assessed valuation where there is a request for a reduction in such assessed valuation currently pending; or where there has been a reduction in the assessed valuation for the year next preceding the effective date of the current assessed valuation in effect at the time of the filing of the application.” (Underscoring supplied.)
It is undisputed that the property was purchased in January, 1956 for the sum of $540,000, of which $125,000 was paid in cash, and that the sale was bona fide. It is also undisputed that the 1956-1957, 1957-1958 assessed valuations were reduced by the Tax Commission at the owner’s request from $470,000 to $455,000.
Prior to April, 1957, the State Residential Rent Law (§4, subd. 4, par. [a], cl. [1]; L. 1946, ch. 274, as amd.) provided that the valuation to be adopted in determining a landlord’s eligibility was the property’s equalized assessed valuation in effect at the time the landlord’s application was filed. The respondent was also given the right, in his discretion, to use as an alternate index of value, other means of determining *274 the valuation of the property, such as a bona fide sale of the property since March 15,1951, or the reduction in the property’s assessed value either granted for the previous year or pending for the current year.
In 1957 (L. 1957, ch. 755) this portion of the statute was amended by the Legislature so as to compel the respondent to adopt the sale price as the proper index of value where the property was sold since March 15, 1953 and the transaction was found to be a bona fide sale unaffected by special circumstances.
Under said amendment, where such a sale has occurred, the purchase price is the sole valuation the commission is permitted to use. It is only in the absence of such a sale that the commission is vested with discretion to adopt the property’s equalized assessed valuation or one of the alternate valuations retained in the extended statute.
Even prior to the 1957 amendment when the commission had the discretionary authority, instead of a mandate, to use the purchase price of property instead of the equalized assessed value as the index of valuation, the respondent was repeatedly sustained by the courts whenever he exercised that discretion upon finding the purchase price to be bona fide (Matter of Kaufmann v. Abrams, 141 N. Y. S. 2d 716, affd. 286 App. Div. 998, motion for leave to appeal denied 309 N. Y. 1034; Matter of Mallín v. McGoldrick, 141 N. Y. S. 2d 647). Whenever the commission at times sought to regulate against the use of a bona fide purchase price in certain situations, the courts annulled these determinations and compelled its use (Matter of 340 East 57th St. Corp. v. Weaver, 3 Misc 2d 356; Matter of Mercedes Realty Co. v. Weaver, 3 Misc 2d 1012, both cases affd. 2 A D 2d 678 and affd. 2 N Y 2d 799).
As a result of this conflict regarding the use of the sale or purchase price, the Legislature amended the rent control law requiring the commission to use that price, if bona fide, to the exclusion of the other alternate methods. (See N. Y. Legis. Doc., 1957, No. 22, p. 24.) The conclusiveness of this legislative mandate with reference to a bona fide sale has been judicially recognized and enforced. (See Matter of Management Holding Corp. v. Weaver, 10 Misc 2d 1000.) The respondent having found that there was a bona fide sale in a free and open market and unaffected by the special circumstances prescribed in the act, this phase of the respondent’s determination must be sustained.
The voluminous record reveals that as a result of the service complaints filed by the tenants, a detailed inspection was made *275 of all the apartments and the house itself, covering a three-day period. All necessary repairs required by the respondent, and by the Department of Housing and Buildings, and the violations resulting therefrom, have been removed and the services restored. In addition, the record sustains the respondent’s determination that there has been no reduction or decrease in services affecting the lobby, doorman, gardener, etc.
The items of expense and the method of computation employed by the examiner and accountants of the respondent are within the scope of the procedures adopted by the respondent and are not contrary to good real estate practice.
In any event, and assuming some of the items of expense were improperly used, the court notes that the respondent withheld approximately $1,000 from the landlord’s over-all grant because of the statutory prohibition against increasing a tenant’s rent by more than 15%. This renders the tenant’s grievances academic, and in any event it would not change the amount of the rent increase which was actually granted.
Accordingly, there being a reasonable basis in law and fact for the respondent’s determination, the petition is dismissed.